Aida Ileana Oquendo Graulau<br>
Secretaria General

# 99 DTA 121

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

EX-AGENTE EDUARDO LOPEZ PEREZ, PLACA 14573
Recurrente

v.

POLICIA DE PUERTO RICO
Recurrida

Núm. KLRA-98-0318

San Juan, Puerto Rico, a 18 de marzo de 1999

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano
y los Jueces Miranda De Hostos y Giménez Muñoz

Giménez Muñoz, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Eduardo López Pérez (López) solicita la revisión de la resolución emitida por la Comisión de Investigación, Procesamiento y Apelación (en adelante *"CIPA"),* que sostuvo la decisión del Superintendente de la Policía de Puerto Rico (en adelante *"Superintendente"),* de expulsar al señor López del puesto que ocupaba. El señor López fue expulsado por haber cometido seis faltas del Reglamento de Personal de la Policía, en particular porque presentó un documento alterado con el resultado de un examen para ascenso.

En síntesis, plantea el señor López, que la CIPA erró en la apreciación de la evidencia al confirmar su expulsión del cuerpo. Plantea además, que la decisión que emitió la CIPA no estaba basada en la totalidad del expediente.

Examinadas las posiciones de las partes, la exposición narrativa estipulada de la prueba (en adelante *"E.N.E. P.").* y las bases de la resolución recurrida a la luz del derecho aplicable resolvemos que procede denegar el recurso.

### I

Surge del expediente ante nos que el señor López se desempeñaba como policía para la Policía de Puerto Rico y que como parte de los requisitos de ascenso al rango de Sargento, la agencia administró un examen que constaba de ochenta (80) preguntas, el cual aprobaría todo aspirante que contestara correctamente un total de cincuenta y seis (56) preguntas. El señor López tomó el referido examen y posteriormente, el Lcdo. Francisco Catalá Barrera, Presidente de la Junta de Exámenes de Ascenso, notificó a los aspirantes la puntuación obtenida. Según la notificación hecha al señor López, éste fue informado que había fracasado en el examen, pero el señor López reclamó haber obtenido cincuenta y cuatro (54) puntos en el antes mencionado examen.

Es menester señalar que el obtener 54 puntos no significaba haber aprobado el mismo, pero la aprobación era posible si a este resultado se le sumaban dos (2) puntos adicionales, los cuales fueron concedidos a todos los aspirantes, ascendiendo así la puntuación a 56. De esta forma el señor López hubiese calificado para recibir adiestramiento en la academia y ascenso al rango de Sargento.

Ante la reclamación del señor López, la Policía de Puerto Rico realizó una investigación administrativa relacionada con la alegada conducta del señor López como miembro de la Policía. Dicha investigación alegadamente reveló que el señor López alteró la comunicación recibida sobre puntuación obtenida en el examen, al reclamar el haber obtenido cincuenta y cuatro (54) preguntas correctas, contrario a los cuarenta y dos (42) puntos que se le notificaran. La investigación reveló además, que el señor López presentó documentos falsos ante la Sra. Mercedes López Yompart quien es empleada que colabora con la junta de exámenes.

El Superintendente le formuló cargos al señor López que van desde el demostrar incapacidad en el desempeño de su deber, someter o redactar un informe falso, hasta el observar una conducta lesiva, inmoral o desordenada en detrimento del cuerpo de la Policía. Mediante comunicación del 13 de mayo de 1997 el superintendente expulsó al señor López del cuerpo de la Policía de Puerto Rico y éste decidió apelar la decisión ante la CIPA, organismo éste que luego de celebrar vista, confirmó la decisión del Superintendente.

Inconforme con esa determinación, el señor López recurre ante este Tribunal y señala la comisión de seis errores que atacan las determinaciones de la CIPA por ser contrarias a los hechos probados.

## II

A los fines de la adjudicación del presente recurso es necesario señalar las normas de derecho aplicables a la función revisora de los tribunales, en cuanto a la apreciación de la prueba por organismos administrativos. En el procedimiento adjudicativo formal las partes tienen entre sus derechos, que la decisión sea basada en el expediente. Sección 3.1, Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. sec. 2151. El expediente administrativo es fundamental en cuanto a nuestra función revisora, ya que es principio cardinal de derecho administrativo que la revisión judicial de las determinaciones de hechos de decisiones en las agencias serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo. Sección 4.5 L.P.A.U., 3 L.P.R.A. 2151. *Misión Industrial de Puerto Rico v. Junta de Planificación,* ___ D.P.R. ___ (1997), **97 J.T.S 34**, pág. 728. La evidencia sustancial requerida es aquella que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Hilton Hotels International v. Junta de Salario Mínimo,* 103 D.P.R. 670, 689 (1953).

Por otro lado, las determinaciones de hechos de una agencia no se dejarán sin efecto a menos que se demuestre que son irrazonables, arbitrarias o contrarias a la prueba. *Fuertes y otros v. A.R.P.E.,* ___ D.P.R. ___ (1993), **93 J. T.S. 165,** pág. 11385; *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692,699 (1975). Por lo tanto, existe una presunción de corrección en las determinaciones de hecho efectuadas por la agencia administrativa, la cual es derrotada si la parte interesada demuestra que la agencia incurrió en errores que ameriten revocación.

De otra parte, es norma conocida que un tribunal apelativo no debe sustituir el criterio del foro administrativo por su propio criterio, *Ramos Acosta v. Caparra Dairy Inc.,* 113 D.P.R. 357, 364-365 (1982), sobre todo cuando fue este foro ante quien declararon los testigos y quien tuvo la oportunidad de apreciar su comportamiento y dirimir conflictos. *Garaje Rubén Inc. v. Tribunal Superior,* 101 D.P.R. 236, 243 (1973). En ausencia de pasión, prejuicio o parcialidad debemos abstenernos de intervenir con la apreciación de la prueba. *Pueblo v. Meliá,* ___ D. P.R. ___ (1997), **97 J.T.S. 110,** pág. 1356*; Stgo. Mitchell v. Corp. F.S.E.,* ___ D.P.R. ___ (1996), **96 J.T.S. 106**.

En cuanto a las conclusiones de derecho hechas por la agencia éstas son revisables en todos sus aspectos por el tribunal. Sección 4.5, L.P.A.U., *supra.*

A tenor con estos principios analicemos la prueba que medió en este caso.

En la vista administrativa testificaron el peticionario, el Sr. López Pérez, los Sres. Evaristo González Ghigliotti, Francisco Catalá Barrera, Adalberto Fuentes Rivera, la Sa. Mercedes López Yompart, la Sa. Caridad Martínez, el Sr. Wilfredo López Marrero, la Lcda. Migdalia López Meléndez, el Sr. Elvin J. López Cruz y el Sr. David Villanueva. Además, forma parte del expediente la declaración jurada suscrita por el señor López Pérez, el interrogatorio contestado por éste y una fotocopia de la lista de resultados, donde aparece el señor López con una puntuación obtenida de 42.

Los errores señalados tienen como denominador común dos (2) determinaciones de hecho; primero que el señor López sólo contestó 42 preguntas correctas en el examen y segundo que reclamó haber obtenido 54 preguntas correctas y alteró la notificación de los resultados para que reflejara que había acertado en 54 preguntas.

La copia del récord oficial sometida por la Policía de Puerto Rico (anejo I, alegato del Procurador General), así como los testimonios del Lcdo. Catalá, el señor Fuentes, la señora López Yompart, el señor González y el Sr. Elvin J. López sostienen las determinaciones de la agencia.

En síntesis, estos testigos declararon que el expediente indicaba que el señor López obtuvo 42 puntos en el examen y que la fotocopia que él presentara como prueba de que había obtenido 54 no estaba acorde con la

realidad. Veamos estos testimonios:

El Lcdo. Catalá testificó que trabaja para la Policía de Puerto Rico, administró el examen de ascenso a sargento y preparó la lista de resultados. Declaró además, que hubo una sola notificación de notas y que el método de corrección y preparación de las listas es uno computarizado. Testificó que de acuerdo al informe el señor López obtuvo 42 puntos en el examen. (E.N.E.P., vista 21/VIII y 8,10/X de 1997, pág. 2). En relación a la forma en que se custodia los resultados para evitar que puedan ser alterados, el señor Catalá declaró que el examen se corrigió en presencia de los candidatos y se notificó en ese instante la puntuación obtenida; que el día del examen nadie impugnó la calificación obtenida; que él, como presidente de la Junta, recibe todas las notas y éstas se guardan en un saco cerrado con candado. (E.N.E.P., vista 21/VIII y 8, 10/X de 1997, pág. 3). El señor Catalá declaró además, que el señor López le había visitado en su casa, y le mostró una carta en fotocopia con puntuación del examen en un papel que no correspondía al papel original utilizado para notificar las puntuaciones del examen. (E.N.E.P., vista 21/VIII y 8, 10/X de 1997, pág. 5).

Por otro lado, declaró el señor Fuentes, empleado de la Policía de Puerto Rico en el Negociado de Servicios Técnicos; indicó éste que el señor Catalá le hizo llegar las notas de los exámenes, las que él verificó, y en éstas aparece el señor López Pérez con una puntuación de 42. (E.N.E.P., vista 21/VIII y 8, 10/X de 1997, págs. 4, 5).

Otro testigo lo fue la señora López Yompart quien declaró que el expediente contiene una carta que indica que el señor López obtuvo 42 puntos; que el señor López fue a su oficina y le informó que había sacado 54 puntos; que ella le solicitó el original de la carta al señor López y éste le dijo que no la había encontrado. Por último, declaró que fue ella quien refirió el caso para investigación. (E.N.E.P, vista 21/VIII y 8, 10/X de 1997, págs. 5, 6, 7).

El señor González, examinador de documentos adscrito al Instituto de Ciencias Forenses, declaró el haber realizado pruebas a dos (2) documentos, uno que refleja el resultado de 42 y otro el resultado de 54. Señaló al respecto, que al comparar la impresión de la letra del impreso determinó que las letras y el estilo eran distintos. (E. N.E.P, vista 21/VIII y 8, 10/X de 1997, págs. 1, 2).

El Sr. Elvin J. López, Policía, declaró que conoce al señor López, que tomó el examen en cuestión y obtuvo una puntuación de 54, habiéndose enterado de su puntuación el mismo día del examen. Señaló además, que el señor López lo visitó en su casa, le pidió prestada la carta que notificaba la puntuación y aunque no pudo decir con exactitud cuál carta le prestó, afirmó que lo fue la que indicaba que obtuvo una calificación de 54 u otra donde indicaba que se le concedía un punto adicional. (E.N.E.P, vista 21/VIII y 8, 10/X de 1997, págs. 8, 9).

A la luz de la prueba desfilada y creída, los principios anteriormente expuestos, y examinados los autos del caso es forzoso concluir que las determinaciones de la CIPA se encuentran apoyadas en evidencia sustancial y no deben ser alteradas. La CIPA no sólo dirimió la controversia planteada al conceder credibilidad a la prueba testifical de la agencia, así que los récords oficiales de ésta constituyeron prueba fehaciente que acreditaba el que el recurrente fracasó en el examen con nota de 42 puntos. La explicación que ofreciera el recurrente respecto a cuál fue la carta que solicitó que su compañero le prestara no fue aceptada por la CIPA, como tampoco debemos aceptarla nosotros. Los testimonios vertidos por el Sr. Catalá, la Sra. López Yompart, el Sr. González y el Sr. Elvin López establecen claramente la toma de la carta prestada y la reclamación del peticionario de una nota superior a la obtenida según las autoridades de la Policía de Puerto Rico. Es por ello que resulta inevitable concluir que lo resuelto por la agencia tiene base razonable y suficiente para sostener el resultado.

En conclusión, no se nos ha demostrado que la CIPA incurriera en error revisable en sus determinaciones de hechos, ni error en sus conclusiones de derecho que ameriten la revocación de la resolución, por lo que se deniega la expedición del auto.

Así lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General